UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| GREATER ST. LOUIS CONSTRUCTION | ) | |
| LABORERS WELFARE FUND, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 4:05CV2266CDP |
| | ) | |
| MERTENS PLUMBING AND | ) | |
| MECHANICAL, INC., et al. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This ERISA and LMRA case is before me for decision following a bench

trial of plaintiffs' claims against defendant General Site Services, LLC.  Plaintiffs

resolved their claims against all other defendants before trial.  General Site

Services LLC had participated in the case originally, but I allowed its lawyer to

withdraw before trial because General Site and its principal, John Dickinson, were

no longer cooperating or communicating with their counsel.  Thus, the following

findings and conclusions are based on the uncontested evidence presented by

plaintiffs.

Plaintiffs have shown that General Site Services LLC is liable to them for

unpaid benefit contributions, including contributions due under its own collective

bargaining agreement, and also amounts owed by the other corporate defendants,

Singer Contracting Company and Mertens Plumbing and Mechanical, Inc. Plaintiffs have shown that Dickinson operated all three companies together and did not maintain their separate corporate existences, so all are liable for the obligations to the plaintiffs of the others. I will therefore enter judgment against General Site in the amount of $90,477.11.

## Findings of Fact

This is an action to collect delinquent benefit contributions under collective bargaining agreements. Plaintiffs are several employee benefit plans, the trustees and fiduciaries of those plans, and several unions. Defendants are, among others, a group of interrelated companies, General Site Services, LLC, Singer Contracting Company, and Mertens Plumbing and Mechanical, Inc.

General Site Services, LLC is a Missouri limited liability company, and John Dickinson is its sole owner. John Dickinson is also an owner of Mertens Plumbing and Mechanical, Inc. ("MMPI"); Dickinson is an officer and director of MMPI and was generally responsible for all of its day-to-day operations. MPMI, in turn, was a 50 percent owner of Singer Contracting Company. Karen Dickinson, John Dickinson's wife, was also an owner of Singer, although she had no day-to-day management role in Singer. Instead, John Dickinson was responsible for Singer's day-to-day management. Although Dickinson has at

times denied that the was an officer of Singer or MMPI, he has also represented himself as such from time to time, including on forms filed with the Missouri Secretary of State. The evidence shows that John Dickinson owned, controlled and operated all three companies.

Singer and General Site were both involved in the business of excavating and grading construction sites. Singer had entered into a collective bargaining agreement with plaintiffs which obligated it to make benefit payments. In 2005, after Singer failed to make payments that were due, the plaintiffs obtained judgments against Singer in the amount of $41,438.96. Shortly after that judgment was entered – and in large part because of the judgment – Singer ceased doing business and Dickinson formed General Site. To start the new business, John Dickinson transferred a substantial portion of the assets of Singer, including key equipment, to General Site. Neither John Dickinson nor General Site paid reasonable value for this equipment, and this equipment is used in the day-to-day operations of defendant General Site. As one witness testified, Dickinson just changed the names on the trucks and continued the same business operations under the new name. Further, General Site has paid some of the debts of Singer and has employed some of the same employees as Singer. General Site has the same business purpose as Singer and has common management with Singer, in the

person of John Dickinson.

MPMI was formed as a Missouri corporation by Louis Mertens, John Dickinson, and Karen Dickinson, primarily for the purpose of generating excavation business for Singer (later defendant General Site). General Site has used many of the same suppliers and service providers, including attorneys and accountants, as Singer and MPMI. Additionally, General Site has paid some of the debt of MPMI. General Site has employed some of the same employees as MPMI. Dickinson controlled the operations of MPMI and prepared all corporate filings. One document filed with the Secretary of State was purportedly signed by Louis Mertens, but his name is misspelled on the document, and he testified he did not prepare it or sign it. At times Dickinson paid laborers working for General Site through MPMI, and at times he used MPMI essentially as a payroll service for General Site. Dickinson used the bank accounts of MPMI and General Site interchangeably for both businesses.

Singer's most recent principal place of business was at 17877 Wilderness Cliff Ct., Chesterfield, MO 63005, which is the home address of John and Karen Dickerson. MPMI's most recent principal place of business was the same location. The business records of Singer are or were stored at this address. Additionally, all of the business records, tools and equipment of MPMI have been

in the possession of John Dickinson since the company ceased doing business.

Although they entered into the contracts at different times, all three companies – General Site, Singer, and MPMI – are parties to and bound by collective bargaining agreements with Laborers Locals 42-53-110. Each defendant has a collective bargaining obligation to submit monthly reports and benefit contributions to the Plaintiff Funds for hours worked by Laborer employees. General Site has failed to submit such monthly reports and contributions, or has underreported the amount of such hours and contributions.

For the period of December 1, 2002 through October 31, 2006, MPMI and General Site underreported hours worked by laborers in their employ to the Funds by 3,700 hours. The unpaid contributions that should have been generated by these hours amount to $34,735.32. The contracts also provide for liquidated damages, interest, and attorneys' fees.

## Conclusions of Law

This case is governed by ERISA, 29 U.S.C. §§1132(a)(3)(ii) and 1145, and by the LMRA, 29 U.S.C. §185(a). Jurisdiction and venue are proper.

Under the LMRA, one business entity is the alter ego of another, and thus liable for its obligations, if the two are substantially identical in terms of ownership, management, supervision, business purpose, operations, customers,

equipment, facilities and employees.  Woodline Motor Freight, Inc. v. NLRB, 843

F.2d 285, 288-89 (8th Cir. 1988).  Not all of the outlined factors need be identical.

Under ERISA, one business entity is likewise the alter ego of another if the two

exist independently in form only, and those separate forms are used as a

subterfuge to defraud, to justify a wrong or to mislead or discourage pursuit of

legal action.  Greater Kansas City Laborers Pension Fund v. Superior General

Contractors, Inc., 104 F.3d 1050, 1055 (8th Cir. 1997).

A creditor's bill in equity under Missouri law "enables a judgment creditor

to 'trace the value of the goods and services rendered to an empty-shell

corporation to the parties behind such a corporation who have received and

benefitted from the property or services.'"  H.H. Robertson Company v. V.S.

DiCarlo General Contractors, Inc., 994 F.2d 476, 477 (8th Cir. 1993)(quoting

Shockley v. Harry Sander Realty Co., 771 S.W.2d 922, 925 (Mo. Ct. App. 1989)).

The Missouri alter ego standard applies to such claims.  Id.; see also Mobius

Management Systems, Inc. v. West Physician Search, L.L.C., 175 S.W.3d 186,

189 (Mo. Ct. App. 2005).

Missouri law presumes that corporations are separate entities, and courts do

not lightly disregard the corporate form to hold one corporation liable for the

behavior of another.  Mid-Missouri Tel. Co. v. Alma Tel., 18 S.W.3d 578, 582

(Mo. App. 2000). Missouri courts will "pierce the corporate veil" and hold a

defendant liable for the torts of another corporation under the "instrumentality" or

"alter ego" rule if the plaintiff can establish:

> (1) Control, not mere majority or complete stock control, but
> complete domination, not only of finances, but of policy and
> business practice in respect to the transaction attacked so that
> the corporate entity as to this transaction had at the time no
> separate mind, will or existence of its own; and

(2) such control must have been used by the defendant to commit fraud or
wrong, to perpetrate the violation of a statutory or other positive legal duty,
or dishonest and unjust act in contravention of plaintiff's legal rights; and

> (3) The aforesaid control and breach of duty must proximately
> cause the injury or unjust loss complained of.

Radaszewski v. Telecom Corp., 981 F.2d 305, 306 (8th Cir. 1992); see also

Mobius Management Systems, Inc. v. West, 175 S.W.3d 186, 189 (Mo. App.

2005). This standard is almost identical to that applied in ERISA cases. See

Kansas City Laborers, 104 F.3d at 1055.

In determining whether one corporation exercised control over another to

the extent necessary to pierce the corporate veil, I look to a number of factors,

including: the ownership and creation of both corporations, the management of the

corporations, the physical location of corporate offices, and the transfer of assets,

contracts, and employees between the corporations. See Operating Engineers

Local No. 101 Pension Fund v. K.C. Excavating & Grading, Inc., 2002 WL 1492103, at \*6 (W.D. Mo. March 11, 2002); see also H.H. Roberson Co. v. U.S. DiCarlo General Contractors, 789 F. Supp. 998, 1000 (E.D. Mo. 1992); Edward D. Gevers Heating & Air Conditioning Co. v. R. Webbe Corp., 885 S.W.2d 771, 774 (Mo. Ct. App. 1994). Connected ownership via spouses satisfies the factor of "common ownership." Midwest Precision Heating and Cooling v. N.L.R.B., 408 F.3d 450 (8th Cir. 2005); Operating Engineers Local No. 101 Pension Fund v. K.C. Excavating & Grading, Inc., 2002 WL 1492103 (W.D. Mo. March 11, 2002).

Singer Contracting Company and General Site Services, LLC, are independent entities in form only. They had substantially identical ownership, management and supervision. The companies were engaged in the same business, and were operated by the same person from the same location. They employed some of the same employees, and used some of the same equipment. General Site Services paid debts incurred by Singer Contracting Company. It was organized at least partly so that John Dickinson could continue in the same business as before while avoiding Singer Contracting Company's obligations to the plaintiffs, specifically the judgment in the amount of $41,438.96. General Site Services, LLC is an alter ego of Singer Contracting Company, and is liable for the previous judgment against Singer.

General Site Services, LLC has common ownership, management and supervision with Mertens Plumbing and Mechanical, Inc. in the persons of John and Karen Dickinson. MPMI was incorporated for the purpose of generating additional business opportunities for Singer Contracting Company, and later for General Site Services, LLC. John Dickinson ran the day-to-day operations of both companies and operated both out of his home, treating their assets, employees, and bank accounts as if they were all one company. General Site Services, LLC is an alter ego of Mertens Plumbing and Mechanical, Inc., and so is liable to plaintiffs for any amounts MPMI owes plaintiffs.

Plaintiffs have shown that defendants breached their contractual obligation to submit monthly reports, and they breached their contractual obligation to truthfully report hours worked under the collective bargaining agreements and to make contributions due, in the amount of $34,735.32.

Plaintiffs are entitled to judgment against General Site Services, LLC as an alter ego of Singer Contracting Company, for the judgments they previously obtained against Singer Contracting Company in the amount of $41,438.96. Plaintiffs are further entitled to judgment against General Site Services, LLC in the amount of $34,735.32 for underreported contributions to the Plaintiff Funds for the period of December 1, 2002 through October 31, 2006. 29 U.S.C.

§1132(g)(2)(A). Plaintiffs are further entitled to liquidated damages in the amount of $6,945.13 on the amount above, per ERISA, 29 U.S.C. §1132(g)(2)(C). Plaintiffs are also entitled to prejudgment interest on those contributions. 29 U.S.C. §1132(g)(2)(B). At the time of trial that interest amounted to $4,089.70. As of today they are entitled to additional prejudgment interest in the amount of $3268. Plaintiffs are further entitled to recover their reasonable attorneys fees and costs, 29 U.S.C. §1132(g)(2)(D), which may be shown separately by affidavit and/or other supporting documentation.

## Conclusion

Plaintiffs have met their burden of proof, and General Site Services has not offered any evidence to counter this evidence. Accordingly, Plaintiffs are entitled to judgment against defendant General Site Services in the amount of $90,477.11. A separate judgment consistent with this opinion will be entered today.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 13th day of December, 2007.